for today. Henry Abbott Laboratories, counsel for the petitioner. Good morning and may it please the court. I'm Don Verrilli for petitioners. I'd like to request four minutes for rebuttal please. The district court ruled that petitioner's patent infringement complaint triggered the crime fraud exception to the attorney-client privilege even though petitioners committed no fraud. That ruling was unprecedented, highly injurious, and clearly wrong. It vastly expanded what is supposed to be a narrow exception to the privilege and it did so on the basis of a clear misreading of this court's decision in Chevron and in direct conflict with the law of the Federal Circuit. Okay, Mr. Verrilli, thank you. We've got, we're well familiar with the gist of your argument so why don't we go ahead and get right into our questions. Your assertions, it seems to be focused very heavily on the idea that this is just a finding about baseless litigation and baseless, you know, we get you into an argument about any Rule 11 violation and therefore this is a tremendous expansion. But I want you to address your opponent's argument that this isn't just baseless litigation undertaken deliberately and with ill intent to break the law and that's what sham litigation is. It's baseless litigation undertaken with ill intent to break the law and that that's qualitatively different and it doesn't throw the net as widely as you say and indeed under our own precedent this is a fully defensible ruling by Judge Bartle. Just take that on specifically. I will. There's a lot in there, Your Honor, and I've got quite a few points to make in response if I could. Well, if you want to start, start with the the point that it's not just baseless litigation. It's a sham. That's their main pitch. Would you take that up? Yes, of course. First thing to say about that is that with respect to whether it's a sham, that's an open question in front of the District Court because this is... Is it really? Yes, yes it is because... I mean, he hasn't ruled on it in this case and it's not race judicata from the last case, but is there any doubt in your mind whatsoever that the finding by the District Court judge here was that in saying the crime-fraud exception applies, Judge Bartle is saying this is the same sham. This is the same, the very same issue. I think that the threshold point I want to make is that one cannot assume that conclusion for purposes of deciding whether the attorney-client privilege should be vitiated, and that I think is what one would do by saying that the sham litigation finding is already made, and I do think that's a problem. Second point... Do you think if he had said first, I am ruling on the sham piece, I am ruling on the subjective intent, I did it before, I'm going to have an argument because it would be... No, we'd have a whole host of arguments. We just wouldn't have that one, but we'd have a whole host of other ones. The second one is that it's important to understand what sham litigation is in this context. It's not an actionable wrong. It removes a First Amendment defense to an antitrust violation, but it's not an actionable wrong in itself, and so I do think it overstates it to say that it's an actionable wrong. I don't think that's right, and I do think this is a particularly important problem in a hatch-waxman context, and I would like to be able to focus on that. Could you get to that in a minute, though, please, Mr. Verrilli, because it seems to me that a predicate to much of these substantive points needs to be addressed, and that is the very nature of the remedy that you're seeking here. We are in a somewhat unusual posture in terms of the remedy, are we not? I mean, as soon as I picked up these papers after enough years on the bench when I see mandamus sought, I think this is unusual, and in fact, words such as an extraordinary remedy and extreme have been used by both our court and the Supreme Court, and you know what that means in terms of what must be shown for you to obtain relief under the law that allows this remedy to be granted. So how is it that this is an appropriate remedy that's available to you? So I would point the court specifically to page 111 of the Supreme Court's Mohawk decision, is it 558 U.S., in which, and that's, of course, a case in which the Supreme Court said that routine decisions ordering production, that's page 111 of the opinion, 558 U.S., that there is no collateral order review of routine decisions to override the attorney client privilege, but what the court specifically said in that unanimous opinion was that mandamus remains available for novel and particularly injurious privilege rulings. But Mohawk also said that post-judgment appeals generally suffice to protect the rights of litigants, ensure the vitality of the attorney-client privilege. So that, again, gets us back to what is so extraordinary, what is so extreme here, that ought to make mandamus lie? Well, I don't think there's any dispute that this is a novel ruling. It is a very substantial expansion of the crime-fraud exception in which the district court said that the constituent elements of fraud, misrepresentation, Well, but, okay, even assuming all that's true, don't you need to demonstrate that this is a clear and indisputable abuse of discretion? And how can it be indisputable if this is so extraordinary that there were not binding principles of law that should have been applied here, but as you suggest, were not? Well, you know, I think there can't be a clear answer to a legal question, even if there isn't binding circuit precedent in this circuit on that question. There is binding circuit precedent in the federal circuit, and that's the only circuit that Mr. Verrilli, I mean, you give the N. Ray Richard Roe case the back of your hand in the reply that you filed, but in that case, the Second Circuit said explicitly, explicitly, that if there were sham litigation in an antitrust context, that that would be a basis for vitiating the attorney-client. Respectfully, your honor, I disagree with that characterization. It said something far more modest than that. Well, I'll read it to you. We'll put it on the record. The court said, where the very act of litigating is alleged to be, it's alleged as being in furtherance of a fraud, the party seeking disclosure under the crime fraud exception must show probable cause that the litigation or an aspect thereof had little or no legal or factual basis and was carried on substantially for the purpose of furthering the crime or fraud. Absent such a showing, the requisite finding that an otherwise privileged or immunized communication was intended to further the fraud cannot be made. For example, one may violate the antitrust laws by bringing baseless litigation intended to delay entry into a market by a competitor. Why isn't that exactly this case? That paragraph goes on to say... Well, answer my question before you say what it goes on to say. Why isn't that language, when they violate the antitrust laws by bringing baseless litigation intended to delay entry into the market by competitor, an exact description of this case? I do think that this case, like that dictum in the Richard Rowe case, does involve an allegation of sham litigation, as Your Honor described. But what that paragraph goes on to say that in such cases, it might be the case that the crime fraud exception applies. It might be the case if they're after careful review, certain documents show certain things like directions by a You're kind of missing what I'm trying to get you to answer, which was springing off Judge Smith's question to you. How can it be clearly and indisputably a mistake, an error of law, when language like this is coming from a sister circuit? How can it be clearly and indisputably erroneous as a matter of law, when something this clear is said by a highly respected circuit judge, Chief Judge Winter, in a precedent from the sister circuit? Well, because it's dictum in a case that involved crime and not criminal case, not a civil case, crime and not fraud, it was dictum, and it was a case in which the court held that the exception didn't apply. And so to the extent that the court thinks that anything significant should be read into it, I would suggest that that is still considered dictum. In cases that have actually litigated the issue in the federal circuit, there is a clear answer, a clear environment in that circuit. There's at least a circuit split of sorts. But there's a right answer to this question. But the question isn't if there's a right answer or a wrong answer. The question is whether you've got on your side law that's so clear and indisputable that mandamus should lie. I'm going to go back to what the Supreme Court said in Mohawk, Your Honor, if I may. What the Supreme Court said in a unanimous opinion was that mandamus is reserved for novel and especially injurious privilege questions. Novel, if it's novel, that means that there's going to have to be an issue to be resolved on mandamus. Wait, is your legal position really that if it's a new question you automatically get mandamus? No. The other three things still apply, right? You still have to show clear and indisputable error of law, don't you? It's a novel question on which we are clearly right, and we are clearly right on this issue. That's our position. I'm sorry, Your Honor. That's okay. A moment ago when you were responding to Judge Jordan's question, you distinguished the case based on crime and not the fraud exception. As I understand it, the crime fraud exception applies when a client is committing or intending to commit a crime. And filing shame litigation can lead to criminal liability under Section 1 or 2 of the Sherman Act, right? Well, in very rare circumstances, it's possible. I'm not aware of any cases. But not for purposes of the crime fraud exception, Your Honor. There has to be with respect to the crime part of the crime fraud exception, a very clear line that involves actual criminal proceedings. Every single reported case in which the crime exception has been invoked has involved an actual criminal proceeding, either a grand jury proceeding or a criminal trial. And that... Stefron said committing or intending to commit, right? Yes, but a fraud. A fraud or a crime. The case is a fraud or a crime. Yes, but I'm saying, Your Honor, I think it's very important that this Court draw that line very firmly. There is no precedent in the history of this country, as far as I'm aware, in which the crime part of the crime fraud exception has been invoked in a civil case. And that has to be true, if one thinks about it, because that, you know, that would mean... I'm sorry, can you repeat that first part again, Mr. Verrilli? I might have missed it. There's been no case... I'm not aware of... I'm not aware of any case, Your Honor, in which the crime part of the crime fraud exception has been invoked in a civil case that justified piercing the attorney-client privilege on the ground that... Is it the case that here, Judge Bartle did that? Are you asserting that Judge Bartle did that? No, no, I'm not. I'm trying to answer Judge Montgomery Reeve's question, and my friends on the other side have made exactly that argument. I'm trying to explain why that argument cannot be correct. But if one thinks about it, that would mean that the attorney-client privilege could be vitiated in every single civil antitrust case, because every one of them could potentially be a criminal case. It could be vitiated in many, many copyright cases, because there's criminal copyright liability. It could be vitiated in trade secret cases, because there's criminal trade secret liability. Is it that it could be vitiated if there were shown to be an intent to undertake criminal activity? Because that's what the language of the cases is. It says... and it talks about a crime or where there's actual proof they were intending to violate the criminal law. That's right, that's true, but it's still a considerable problem, because in order to trigger this, all one needs to show is a prima facie case, and it's not that hard to allege a prima facie case of intent to commit monopolization, and then on that theory, then you vitiated the attorney-client privilege, and I just don't see how that could possibly be right. Let me return to the writ again, the remedy you seek, and because I continue to be concerned with the hurdles that are placed in your way to be able to obtain the relief that you seek. The Supreme Court in Mallard, in talking about what needs to be shown, referred to a clear abuse of discretion. We all know what an abuse of discretion is as a garden variety situation. I guess clear abuse of discretion ramps that up somewhat, but interestingly, the Supreme Court grouped clear abuse of discretion with the concept of a judicial usurpation of power. That's pretty severe. Yes, I understand that, Your Honor. It's an extraordinary remedy, but it's an extraordinary remedy that the United Supreme Court in Mohawk said is available to when you have a novel and highly injurious privilege ruling, and that safety balance, I think, was an indispensable part of what the court said in Mohawk. Clearly it's available. It hasn't been revoked by... And this circuit has repeatedly, and we cited these cases in our briefs, has repeatedly invoked mandamus to address privilege issues when they meet that standard, and this case is no different, and I think if I could, I won't say this is no different, in that we've got precedent from this judge, from involving this party, involving the very litigation that is underlying this litigation, where the judge said, yeah, this is a sham. It came to this court. This court said, yeah, this is a sham. Doesn't that make this a little different than those cases you're talking about, Mr. Verrilli, or is all that history irrelevant? I'm not saying it's irrelevant, Your Honor. It's not even close to determinative, though, because that prior finding and the prior finding by the prior affirmance by the Third Circuit, and of course, I do think it's important, I'm going to digress for a second, but the prior Third Circuit panel reversed one of the two findings of sham litigation by the judge. We're not talking about that. We're talking about the Rodrigo case, and we're talking about the finding that was affirmed. I know that, but I think it's significant, and I'll explain why in a minute, if I could, and the more basic point is this. None of those findings involve a finding of misrepresentation of fact or reliance on the misrepresentation of fact, and those are the conspicuous elements of fraud. You say in your petition at page 20 and 21 that no one has ever contended that the suit involved any misrepresentation or concealment of material fact. They come back on the other side and say, well, wait a second. To find that there's sham litigation, they're finding that the assertion by Abbott that they believed that there was patent infringement was absolutely in a complaint, and it was a lie. They never believed it. That was the whole point. They never believed there was patent infringement. They made it up to delay the entry into the market so they could reap monopoly rents. Now, I'm having a hard time understanding how you can say in your briefing and at the podium no one has ever claimed that there was a misrepresentation when that's the very heart of the sham litigation assertion that you never, not you personally, sir, but that Abbott never believed that there was patent litigation. It only wanted to delay entry. How can you assert that there was no misrepresentation? So, Your Honor, there was no misrepresentation of material fact, and there was no reliance. Isn't that a fact? Isn't it a material fact when somebody comes and says on information and beliefs, there's patent infringement here? No. At the most one could say is that that is a misrepresentation of law. It is not a misrepresentation of material fact. Doesn't patent infringement involve facts? Isn't this, you know, to be an infringing thing, you've got to show a whole bunch of facts. You've got to show that that thing, that chemical that's in your drug matches up with the chemical that's in this other drug. That's a fact. That's not a legal determination solely. It's got, it's full of facts. That's true, Your Honor, but there is no suggestion, no one has suggested in this case, not the respondents, not the district judge, that any factual allegation in the complaint is false or a misrepresentation, not a single one. I thought they had, but we'll let them. No, they had not. I think their allegation is at the meta level, if you will, that because the lawyer, and by the way, of course, it was the lawyer, not the client, who signed the complaint, but that the lawyers signing of the complaint attests to the lawyer's belief that there's a good faith basis for filing the complaint and that that's the misrepresentation. As I said, at most that can be a misrepresentation of law, and we don't think it is, and of course the court has the documents so the court can, you know, the court knows what happened here in terms of the back and forth, but that's law. That's not about fact, and there's no allegation in any fact in the complaint was false or misleading. We'll hear from them. But I do want, if I could, use this to springboard to the Hatch-Waxman context, because I think it's really important. I think it's important that the court understand it in the context of resolving this dispute. Now, the problem here under Hatch-Waxman, of course, is that because of the law that Congress enacted, there is automatically an extensive stay of the approval of the case. In every case, a drug manufacturer is going to be vulnerable to the allegation that the patent infringement action was filed for purposes of delay, because everyone knows the delay is going to occur by operation of law. So everything then comes really... You do, understandably, keep wanting to make this sound like there's a nuclear bomb going off in this body of law, but what's the argument that this is going to affect every single Hatch-Waxman case when the assertion here is not that this is your garden variety Hatch-Waxman Act, of which there are thousands filed, but that this is a case in which there's been proof to the this court that there was indeed no basis for the case, none, and that it was known there was no basis for the case. How is that not enormously different than your mind run of Hatch-Waxman litigation? It's going to take me a minute to explain it, but let me try. Because the subjective element of sham delay will virtually always be available to a person in a response position to argue, because Congress provided for an automatic stay. So everybody knows that's what will happen. I can't let you go with that, because you're saying that will always be available. It'll only be available if you can show that that was the purpose, not simply a purpose, because presumably somebody could file completely legitimately and be glad and hoping to get the delay. In fact, that's the purpose for which Congress gave it. It gave it for a good reason, but this assertion proved once and affirmed once is that was the only reason, the sole reason. There was no legitimate reason and they knew it. So why do you keep acting as if that were not the factual background behind all of this? The point I'm trying to get to is exactly what Your Honor is addressing now, that because the second element will almost always be there, the first element of whether it's objectively baseless, everything rides on that. Everything rides on whether the lawyer's judgment is correct. You got this wrong, or I'm completely wrong. It's not just that it's objectively baseless and that that's the first element, and it's not just that there's available a 30-month stay. There is a subjective intent piece of this which was proven once and affirmed once. You keep eluding that, and I'm struggling to understand why, unless you just have no good argument to meet it. There is a subjective element to that second piece which you keep skipping over. So either tell us you've got some law that shows that that subjective element really isn't important, or own your position and say, well, we can't meet it. So what I'm trying to say, Your Honor, is that we're, you know, part of the reason that this is such a highly injurious decision is that it, the ruling here of the District Court, is that sham litigation without any proof of fraud, without any proof of the elements of fraud, triggers the crime-fraud exception. And with respect to the second element, Your Honor is right about what's happened in this case, but what I'm trying to suggest is that in every case, because the standard for triggering the exception is a prima facie case, that in virtually every case, the company in respondent's position will be able to... Your position for the last so many minutes in response to Judge Jordan has really sounded to me, and I hate to sound hackneyed, but like a floodgates argument. And my follow-up to you, again, hoping I'm not sounding trite or hackneyed, is why not in those situations trust the district judge, an experienced district judge, whose job it is to find facts. Judge Jordan has made the point that Judge Bartle has handled various aspects of this controversy he has. He also was the district judge in our 2014 In Re Grand Jury case on crime-fraud exception. Why is there such a concern that the district courts institutionally, and through their experience of weeding through evidence, can't make sound determinations here without endangering institutionally the attorney-client privilege? I do think there is a very substantial risk of chill that reliance on the good judgment of a district judge is not going to obviate, and I'm going to try to answer both of Your Honor's questions at the same time if I could. There's a point I haven't been able to get across, but I really think it's important, and it's because pretty much everything in this crime-fraud exception litigation in the hash-waxman context is going to come down to whether the lawyers and the clients made a judgment that was correct about whether they were on the right side of the line of objective reasonableness or the wrong side of the line. Everything will come down to that, and these are very difficult judgments where the law is highly technical and evolving all the time, the facts are highly technical, and these judgments are hard to make. These are precisely the situation in which one would want to make sure that the attorney-client privilege operates to ensure full and frank communication between lawyer and client. I guess I wouldn't have any disagreement with that at all, but once again, you have eluded the subjective component. You've said this is very complicated, this is very hard, is it going to be on the right side of law or the wrong side of law? There's a finding here, at least in the other case, which I believe will not somehow, at some point, be made in this case, since it's the same issue, that there is a subjective component here, and it's not merely that they made a tough call and ended up on the wrong side of the line, it's that they meant to be on the wrong side of the line. It was the purpose, that's the whole point of the sham litigation law. There is a purpose to misuse the law and misuse the machinery of the courts for an illegal purpose, an unlawful purpose. You can call it crime, you can call it fraud, indeed one can wonder if crime fraud isn't simply a shorthand for illegality. I mean, we said as much in our 1979 Enright Granitary case, where we said things like, when the lawyer is consulted not with respect to past wrongdoing, but to future illegal activities, the privilege is no longer defensible. That's the real issue here, and it feels like that's an issue that Abbott is having difficulty grappling with. No, I think we are grappling with it, Your Honor. What I'm trying to convey is that, while I understand Your Honor's point about this case, the District Court adopted a principle of law, and that principle of law led this Court's opinion in Chevron to adopt the principle of law that said, unlike in the Federal Circuit, where you cannot show, you cannot pierce the attorney-client privilege on this ground without showing misrepresentation and reliance, here in the Third Circuit one can, because Chevron said a conflict of interest is enough. That is a very substantial expansion of the law. It's going to apply well beyond this case. It is why, one of the reasons why this case is not just highly injurious to us, but we think highly injurious to the system, because out there... I want to understand, I mean, I, like Judge Smith here, floodgates, but I really want to understand the ramifications of this. Are you saying that there are a lot of determinations that litigation, there are sham litigations such that we should be concerned that, even if this is a ruling that sham litigation falls under, if you use the Zolan language that the Supreme Court used, you know, the reasons for the attorney-client privilege thesis to operate, where the desired advice refers not to prior wrongdoing, but future wrongdoing. If we determine that sham litigation, or we determine you're not entitled to writ because sham litigation falls under this exception, are you saying that there are so many determinations of sham litigation that we should be really concerned about the floodgates opening? What I am saying, a version of that, Your Honor, what I am saying is that the Hatch-Waxman context is a common context, and it's, I think it's important to understand how these decisions have to be made. They have to be made within a 45-day window. They are highly complex. They involve very technical facts, very technical law, and if the lawyers, in good faith, try to come up with, to come to the conclusion that there is an objectively reasonable basis for filing the suit, and they file the suit, and the court subsequently disagrees with that, then they're in very great jeopardy of concluded, and this is what happened here, that there wasn't an objectively valid basis. Then, at that point, then the conclusion has to be that the lawsuit was filed for the purpose of getting delay solely, and in every case, the lawyers will know that that delay is going to follow because Congress provided for it automatically. So what you're really saying is that district court judges can't tell the difference between a good faith filing and a bad faith filing? Well, at the bottom, your assertion is we cannot trust district court judges to recognize the difference between good faith and bad faith. So, no, Judge, I'm going back to... You put the rabbit in the hat when you said they made this in good faith. That's the whole point. There's a finding that it was not made in good faith, that it was made in bad faith. So your entire argument, it feels like, is coming down to the assertion that this is very dangerous because you just can't trust those district judges. They can't tell the circuit's decision in the FTC case. What the court held was that there are two components. One, objective baselessness, which is just an objective analysis, and two, the question of whether the lawsuit was filed for purposes of delay once one's concluded it's objectively baseless, but not solely for delay. Yes, but, Your Honor, what the court rejected, and I think this is very important, what the court rejected in that panel opinion was the argument that one has to show that the lawyers subjectively believed there wasn't an objective basis, and therefore were acting with ill intent. And you think that Judge Bartle did not do that? Correct, but the Third Circuit specifically said that that was not needed, and it wasn't found, and I think that's vitally important. That's why everything comes down to whether the lawyers get the objective determination right or wrong. We've given you lots and lots of extra time. Yes, you have, and I appreciate it. Thank you. All right, we'll have you back, and I'm sure we'll give you more than four minutes, Mr. Borrelli, for rebuttal. Good morning, Your Honors, and may it please the court. My name is Russell Korish, and I represent the plaintiff's respondents in this matter. Petitioners, as you already know and you've already said, face three really demanding hurdles here. They can't meet any one of them. I want to pick up with a concept that I heard a few moments ago, that sham litigation is not an actionable wrong. That was the position that the petitioners took. You've already stated what a sham litigation is in a legal sense. Let me tell you what I think it is in a practical sense. It is the subversion of the proper functioning of a district court. Yeah, and they, on the other side, Mr. Korish, are quick to note that you have never alleged a fraud on the court, that you insidiously apparently avoided that. I'm wondering about that. There is a point in your reply, I think, at page 16, or I'm not sure exactly where it is, where you seem to make an argument that walks up on that, but why haven't you argued fraud on the court? Or maybe you did and nobody saw it. What's the truth of that? Yeah, so to begin with, this court has identified a very specific four-factor test for what they call fraud on the court. Which you can't meet? Is that an acknowledgement that you can't meet it? No, we can meet it. They disagree that we can meet it. The specific four-factor of that test is that the court detrimentally relied on the misrepresentation. But I want to be extremely crystal clear. We identified to Judge Bartle two very specific misrepresentations of fact. The first one stems from Rule 8, which requires that the pleader basically set forth the basis on which it's entitled to relieve. The complaint did that. It stated on information and belief, and I'm now going to paraphrase, Perigo is infringing. And in the FTC case, as you know very well, the district court found, and this court ultimately affirmed, that that statement was not just false, but knowingly false. That's an affirmative misrepresentation of fact. Okay, then I'm curious why in your answer, page 7, you say the petition incorrectly asserts that this court's decisions are all consistent with the understanding of fraud that requires deception required regarding material fact. That is wrong. And I read that and wondered, well are you admitting that there was no deception here? Absolutely not. When I wrote the brief, my thought process was the following logical chain. First, we're not required to show that, and second, even if we were, we have. Then where did they come with the idea that no one has ever said that there's been a misrepresentation of fact here? Oh no, we specifically took that on head-on in our brief and said that's absolutely false. And in fact, that was the reason that I actually included in the appendix our actual briefing before Judge Bartle, so that you could see that we made the specific allegation that there was an affirmative misrepresentation of fact. And we cited to the pages in our brief where we did that, and we identified two specific affirmative misrepresentations of fact. The first one was the statement that we've discussed that is in the complaint that Perrigo was infringing. The second one is, I think, equally important, and that is the Rule 11 statement. Rule 11, the very first four words of that rule are representations to the court. And the first of the four is being filed for the proper purpose. And I would submit to you that if that is a representation to the court, then when that statement is false, it is by definition a misrepresentation to the court. And we made that point to Judge Bartle as well. And like I say, that's why we included that brief. So I want to be super clear. We did make that assertion. They also argue that even if you have identified a false statement, there's not reasonable reliance. How can we say that there's reliance, reasonable reliance, on an objectively baseless claim? Two reasons. I want to be clear. I'm going to answer that. Our position is that there doesn't have to be reliance when it comes to an illegal activity. And I can absolutely go through that. But let me jump to your question. We identified two very specific forms of reliance. One of those is this. The district court is required under this court's precedent to accept, under Rule 12b-6, the statements in the complaint as true. The district court starts out with that assumption. It's required to apply that assumption at the motion to on the truth of the statements that are presented to it. The second form of reliance is by the FDA. And we cite activists, the Supreme Court's case. We actually cite this court's prior precedent in two cases, both of them, by the way, stemming from the Perrigo lawsuit, that say that as a matter of FDA, to stay Perrigo's abbreviated, well, it was actually filed as a 505B2 application. Then to answer Mr. Verrilli's point, that then you're really calling the whole Hatch-Waxman apparatus into question, because what you just said is true for every Hatch-Waxman case. And therefore, you really are opening the floodgates or dropping the nuclear bomb or use whatever metaphor you want. You're doing something unprecedented, which takes a congressional grant and turns it into something nefarious. I couldn't disagree. I'm sure you couldn't disagree before, but I'm asking you why. Yeah. So as Judge Bartle held, his ruling here is limited to a case held to be a sham case. In fact, neither the petitioners nor the respondents have identified any case in the history of American jurisprudence, much less any Hatch-Waxman case that's ever been held to be a sham. So the idea that this is going to somehow open the floodgates makes no sense to me. I believe that the vast majority of Hatch-Waxman cases are probably prosecuted in good faith. The second point that I'd make to you is this. In professional real estate investors, the Supreme Court held that when the predicate facts are not in dispute, objective baselessness is a question of law. And you never even get to the subjective baselessness problem until it has been shown to be the case. The patent infringement case, for example, has been shown to be objectively baseless. So the district court is never even considering what the subjective motivation is, whether it was for the 30-month stay or something else, unless and until the case has been found objectively baseless. And we really don't have many good examples of that in the history of American jurisprudence. You've got it in the former FTC case here. They looked at the Teva piece of litigation and said, at least at the Third Circuit level, yeah, we think the district court got it wrong. It's not objectively baseless. Correct. And I assume that the vast majority of Hatch-Waxman cases are not objectively baseless. I'd like to circle back to something you just had started to touch on in response to Judge Montgomery-Reeves' question centered on that is an argument, maybe a significant argument, that has been raised by the petitioners here, that that's a requirement. I've searched, maybe not deeply, widely, broadly enough, but I have yet to find a case that would limit fraud here to that which is in the nature of common law fraud, and therefore having a requirement of reasonable reliance. It seems a more generic type of fraud that has been referred to here. I'm not aware of any case that has explicitly said common law fraud, which would certainly narrow it for our purposes, and this takes me back to my concern about clear and indisputable. And what is out there that is still up for grabs, and therefore may not make this an appropriate case for the vehicle of mandamus? Are you aware of any law, of any case law, that should have been referred to and utilized by Judge Bartle here, that fraud requires reasonable reliance and therefore it would have had to have been shown? The answer is no. How about the holding that Chief Judge Rader and the panel he was working with came to, wasn't it? So that case, well, so two things. Obviously, that's Federal Cherokee case. But you were asked any case. That's a case, isn't it? Yeah, that is. So that case, the allegation of the fraud, was a very, very specific type of fraud known as Walker process fraud. And reliance in the context of Walker process fraud, we're not talking about a general fraud here, we're talking about... Let me pick on the case, because Judge Jordan has certainly made a very valid point that really suggests that my question should have been stated somewhat differently, because I did intend to suggest authority that would have bound Judge Bartle to make a decision in a particular way, not that which is persuasive authority. So other than that case, are you indicating that you're not aware of anything that would require reliance? The answer is, I'm not aware of any binding case that requires reliance. I'm aware of Supreme Court cases and Third Circuit precedent that say that merely attempting to commit a fraud, even without consummating that fraud, triggers the crime fraud exception. And that's relevant because an unconsummated fraud obviously can't have been relied upon. I mean, if the material misrepresentation was never actually made, even though it was planned, no one ever could have relied on it. And in that sense, I... Then take up Unigine, if you would. I think you've got to back and forward when you say that was a very particular kind of fraud. This is the language used. The court said, a party must establish Walker Process Fraud, also known as Common Law Fraud, to successfully pierce the attorney-client privilege under the crime fraud exception. In other words, it didn't look like the court was saying, well, we're dealing here with a particular crime fraud exception, Walker Process Fraud. It looked instead like the court was saying, if you want to use the crime fraud exception, you have to establish Common Law Fraud, which we call Walker Process Fraud in the patent world. What? If that's what the court was saying, that's directly contrary to your position and favorable to the Abbott side, is it not? Well, under that sentence, as you read it... I think I read it right. I think you did. Yes, I read it. I think... I think you... I think you did. And I think the way that the sentence reads, murder... planning to murder wouldn't fall within the crime fraud exception, right? Planning to commit tax fraud, because that sentence says the only way to establish the crime fraud exception is to establish Walker Process Fraud. I think that's probably over-reading it, because I don't think they were talking about attempted murder, but they were talking about fraud, and they did say Common Law Fraud. So why... why is the court... and that court, you know, we're... we're wading in their waters a lot, right? That's one of the things, subtext, that is behind some of the things Mr. Verrilli has said at the podium, and it's not just subtext, it's text, and some of the things they've said in their petition, that, you know, this is... this is patent litigation, and the Federal Circuit's case law should weigh heavily, heavily on our mind, because that's their world. Why are they wrong about that? Two reasons. The first traces back to the mandamus standard, clear and indisputable error of law or abuse of discretion. Got a sister court, let's just say that the Federal Circuit... Not just a sister court, I take their point to be, and this is what I'm trying to get you to answer, I take their point to be, this is a sister court with the particular mandate and remit to opine about and give binding law on issues associated with patent litigation. This is associated with patent litigation, so you should be paying especially close attention. This isn't just like the second, or the eleventh, or the fifth Senate. This is the Federal Circuit talking about patent litigation. This is a case that is all about patent litigation. Pay a special attention. Why are they wrong? The Federal Circuit, in that case, was not addressing the requirements as it relates to sham litigation. It was addressing the requirements of proof as it related to walker process fraud. And in my mind, it made sense for the Federal Circuit, in the context of a walker process fraud allegation, to say if you want to trigger the crime fraud exception in the context of a walker process fraud violation, you must show evidence of its elements. But that is not a statement about what the required proof would be where the wrong was sham litigation. That's what Judge Bartle was addressing, and I don't find the Unigine case, or the Spaulding case for that matter, to be instructive on that issue. What I find far more instructive is this with no reliance requirement. What do we make of the argument that the judge in this case has never reached the subjective prong? And that's important, that the objective baselessness thing, he spoke to that, but the subjective element of sham litigation is not something, it's a, quote, open question, unquote, in this case. Right, so I have three answers to that question. One of them traces to the standard of proof that's applicable here, which is a reasonable basis to suspect. That is the standard in the crime fraud context. A reasonable basis to suspect a fraud, a reasonable basis to suspect communications and furtherance of that. So let's talk about what that means. I'm interested in hearing you talk about that, what that means, because I have to concede that the word suspect is not one that the legal regime I'm familiar with generally resorts to, and so to hear it invoked is almost like chalk on the chalkboard for me. What does, who suspects here? How does this work? The back finder. Okay. This traces back to language from the Supreme Court's Clark decision. There, there was a juror, and that juror had failed during the Vordaer process to disclose certain facts about her knowledge of and prima facie showing. It is. The history here is as follows. In Clark, the Supreme Court said there must be something to give color to the charge, and this court interpreted that later to mean a prima facie case. Does that not make Mr. Verrilli's argument for him, which is that's such a low bar that it, that it means the attorney-client privilege is at grave risk, because if all you have to do is make a colorable allegation, a prima facie case, then that subjective prong is no real guardrail at all. That's their, that's their argument, that there are no guardrails on this as, as Judge Bartle framed it. Are you? There, there are. Why aren't you making, why isn't what you just said something that should make us A mere allegation of sham litigation isn't even enough to get you in camera view. Let's talk about the process. Mere allegation, their argument isn't about mere allegation. Their argument is, hey, wait a second. This subjective prong, if all you got to do is make a prima facie case, that's no guardrail at all. How do you answer that? Because the first step is, is the case objectively baseless? That's almost unheard of. Okay, well then that's, that's also their argument, that this all boils down to objective baselessness, and that is a very complicated, difficult question. And, and I've seen a few patent cases, and I'd say, you know, they're complicated, difficult questions. If it really boils down to the Are you giving it to them? Are you just giving it up to them? Because subjective, subjective intent, it's really a low threshold. No. In fact, I think the Richard Rowe decision that you referred to earlier supports the exactly opposite conclusion. So let me, but let me, but let me answer that question by talking about the guardrails that are in this process. As the United States Supreme Court said in Zolan, number one, the district court always has discretion to even deny in camera review. So when, here's what has to happen before you get to where we're at. What has to happen is, first of all, a district court has to decide, as a matter of law, that no reasonable litigant could realistically expect success on the That's a question of law generally for the court. After that, to the extent that they want to, the party who seeks to oppose the privilege would request in camera review. The burden would be on them to do what we did here, which was to identify a small enough set of documents that the district court can then review those documents in camera. The district court, of course, has discretion to grant or deny that in camera review. Here, Judge Bartle did. If those in camera review documents are not in furtherance of, right, the matter ends. So, and they say here that they weren't in furtherance. And I respectfully disagree, and Judge Bartle obviously respectfully disagreed, and I think the document, we're, I'm the only one, y'all have seen the documents. Of course, you've only seen the 19, because I requested that they submit all 161 that Judge Bartle reviewed. They declined to do that. So, you've got the 19 documents. They've got the 161 documents. I've got zero documents in terms of those documents. But I do have the very generalized descriptions that Judge Bartle provided for those documents, and based on those descriptions, they seem very clearly to be part of the planning, plotting, optimization, and eventually attempt to conceal the sham litigation. So, from where I sit, they seem like they're clearly in furtherance. Okay, I interrupted you. You were running us through your path to decision and why the guardrails were sufficient. Please finish that. If the judge, so we've now gotten to the point, which is almost unheard of, where the litigation is the district court judge, who I feel is in the best position to decide under the circumstances of the case, because that judge is the judge, he's familiar with the facts, makes the decision about whether in-camera review is even appropriate or not. If the judge feels under the circumstances that in-camera review wouldn't be useful. Yeah, we, we got past that. Okay, sorry, I'm, I'm, I'm having to remember where, where I left off. The judge reviews the documents, finds that they're in furtherance of, now the judge is, is going to issue an order that those be produced. And what I would submit to you is that in the case, the Berrywere case, the almost unheard of case, this is the only case where the judge finds that the lawsuit was objectively baseless, reviews documents that show that the attorneys were actually engaging in advice directed to perpetrating a subjectively baseless lawsuit. I think in that rare case, I don't think it's floodgates, I think that's gonna be the one in a million. In that case, yeah, those documents ought to be produced. That's the perfect example of documents that ought to be produced. Is that, is that, is inherent in that decision a judgment about subjective intent? Is, well, there has to, the, the, the district court judge in reviewing those documents, yes, would have to find that there was a reasonable basis to suspect that they were in furtherance of the sham litigation. That's what I'm getting at. The other side keeps saying, well, that's an open question. Is it an open question? If Judge Bartle looks at these documents and says, no privilege here, crime fraud applies, has he or has he not made a judgment about subjective intent? So, two answers. First, although he reiterated in the crime fraud decision his conclusion, not only that the lawsuit was objectively baseless, but also that it was subjectively baseless. It may not be collaterally a stop, but he's making a judgment now with respect to these documents. I guess, logically, I'm, I'm trying to work my way through it. Is there a way he could reach the decision he reached without making a decision about subjective intent? Because he just forgot there's a subjective prong here, doesn't he have to have said something about subjective intent by the mere fact that he concluded these things are not privileged because the crime fraud exception applies? No, he needed to do two things. One is he had to find a reasonable, well, the answer is he had to find that there was a reasonable basis to suspect that they were in furtherance, but the documents themselves. In furtherance of what? In furtherance of the sham litigation. And the sham litigation involves two things, baseless litigation and what? And subjective baselessness. Right. Ergo, he had to have concluded something about subjective baselessness, did he not, to reach the conclusion he did? Because if there's another way to read it, I would like to hear you actually explain it to me. No, the, so look, let me, let me give you the example of a, of an attempted murder plot, where the attorney advice is basically, yeah, go kill that person, right? Sorry, I know that that's an outlandish example. There doesn't have to be proof of the actual murder by the defendant. There just needs to be a reasonable basis to suspect that there was a murder, coupled with a reasonable basis to suspect that the attorney advice was in furtherance. So here, in this context, Judge Bartle did need to find a reasonable basis to suspect subjective baselessness. There's no doubt about that, but I want to get back to Judge Smith's point about what does that reasonable basis to suspect mean? And where I'm ultimately going to end up is that when this court affirmed, after a full three-week trial, that there was subjective baselessness in the filing of the Perrigo lawsuit, as a matter of law, I think, there's a reasonable basis to suspect that there was subjective baselessness. It may not be proved in our case, and, and, and if I could call your attention to, if you give me just a moment, I'd like to tell you what AbbVie... I will give you just a moment, unless my Mr. Verrilli, plenty of extra time, we'd be giving you plenty of extra time, so make your, make your final point, if you would. Yeah, in its joint petition for rehearing in front of this court, and this is on appendix page 535, AbbVie told the court, where a hatch-waxman suit is deemed objectively baseless, that's our case, the panel's decision leaves the antitrust defendant no way to rebut the inference of bad faith without disclosing its attorney's opinions and mental impressions, and so what they've told the court alone provides the reasonable basis to suspect subjective baselessness. They basically said that under this court's FTC decision, an inference of subjective bad faith arises naturally, and they're refusing to waive privilege, and therefore, there's automatically a Thank you very much, Mr. Koresh, I appreciate your argument, we'll go ahead and hear from Mr. Verrilli on rebuttal. Thank you, Your Honors. First point I'd like to make is about the Federal Circuit law. Your Honor read the appropriate sentence from Unigine, I just want to read the next sentence, because I do think it goes directly to what Judge Verrilli said, and I think the key point with respect to the District Court's decision, and this is at pages 5 to 7 of the appendix where the opinions held, the District Court here specifically rejected that, so that's the law of the Federal Circuit, it's not the law of this Circuit. Well, in answer to Mr. Koresh's assertion that that was a statement made in the specific context of a Walker Process Fraud, which is a common law fraud, and so it's not the law of this Circuit. You're over-reading it to read it the way you were pressing on it. Yeah, I don't think that's right, that's why I read the next sentence, it's where the Court said, a finding of common law fraud in the patent context must be based on independent and clear evidence of deceptive intent. Was it a Walker Process Fraud case, Unigine? Yes, it was. Yes, it was. Sure, but I think it's very hard to read this opinion and come to any other conclusion than that the Federal Circuit would come to a different answer than Judge Bartle did in this case. And I do think that's important, both because of the expertise point that Your Honor raised, but also, you know, very often these sham litigation allegations come up in counterclaims in patent infringement suits, in which case it would be the Federal Circuit law governing. Well, the Federal Circuit has expertise, unquestionably, with patent cases. But as we've seen, and as the briefing demonstrates in the various cases cited, that the crime fraud exception often is raised in criminal cases. And whatever decision we make and whatever opinion might be written may have reached beyond, may well have reached, beyond just a patent case. What's your response to that? Well, you know, I think the problem here, if I may, is that the rule of law that the District Court adopted does reach very widely. And I know, Your Honor, you raised the floodgates point, but I think it's very substantial. And I think my friend on the other side validated the floodgates point, because what my friend on the other side is claiming is the misrepresentation of fact. It's essentially the lawyer's signature saying that the lawyer believes there's a good faith basis for the lawsuit. That was both the Rule 8 and the Rule 11 point that my friend made. So what the respondents are arguing is that Rule 11 violation is fraud on the court. So every time there is a prima facie case, a good faith reason to believe that there might be a violation of Rule 11, then the attorney-client privilege is vitiated on that theory. Is it every time, or is it only when, as we would be addressing this specific case, is it only when there's been a demonstration of both objective baselessness and subjective bad faith? So, two things about that. Again, I think my friend on the other side validated it, that what Judge Bartle held, what they are arguing, what the law seems to me would have to be if one adopts that view, is that when there is a prima facie case of subjective baselessness as well as objective baselessness, then the privilege is vitiated, because that's the standard prima facie case. And I do think that does prove our point, that it's very easy in the Hatch-Waxman context to establish a prima facie case, given that you always have that knowledge. You always have what knowledge? Knowledge that by filing a lawsuit, you'll get the 30-month stay, and so delay of competitive entry will always occur, and you will always know that. You will always know you have that, but the key point is not that you know you're going to get delay. The key point is that your only purpose, your sole purpose, is the nefarious purpose of obtaining that delay, because you have no, in your own mind you know, that you are not entitled to that delay. As I tried to explain before, as I read the prior Third Circuit opinion here, in fact I'm quite sure because this is what the whole argument was about in that case, that the prior opinion of this court in the FTC case specifically rejected the argument that one has to prove that the lawyer subjectively believed that the case was meritless. Let me take issue with that. The court said it's not the subjective mindset about the merits that controls, but the court never said, and indeed it would make no sense for our court to have said, that subjective understanding of the merits had nothing to do with the subjective intent of wanting solely delay for delay's sake, period. How could it be the case that your malintent in a sham litigation would not involve a subjective understanding of the merits as part of the overall? Well, because you could subjectively believe that you had a good faith basis to file the lawsuit objectively, and that you would understand at the same time that doing so would trigger the 30 month stay. You subjectively believed in good faith that you had a basis for doing it. Right. It wouldn't be sham litigation, would it? No, that's the problem, your honor. That is the problem. The Third Circuit rejected that very argument, your circuit rejected that very argument in the FTC case. And they're saying we got it wrong. Well, yeah, we disagreed with it. That was the argument that we made in that last case, that very point, and the panel can read the opinion. This is the argument. It's one thing to say that even a lawsuit filed in subjective good faith in terms of its merits can nonetheless result in sham litigation and removal of the First Amendment privilege you otherwise have. It's another thing to say, quite another thing to say, and I do think this is a key thing, that doing so explodes the attorney-client privilege. And that's where the chill comes from, and I do think that is a considerable serious point. Well, would it allay your concern if an opinion from this court came out that clarified that point? Because when I read the sentence, the ultimate inquiry under sham litigation, litigation subjective wrong, is the defendant's subjective motivation, not its subjective belief about the merits of its claim. I understand that to be saying it's not just about the merits of the claim. There's more to that. But I didn't understand the court to be saying subjective belief about the merits had nothing to do with it. So I think if this court were to clarify that if the evidence showed that counsel had an objective belief in the good faith, had a good faith belief in the objective basis of its case, that in that situation… That has some bearing on it, right? Well, I think it seems to me it needs to have, in the Hatch-Waxman context specifically, determinative bearing, given that one can always meet the prima facie case on delay because of the 30-month stay. And then I do want to make the point about Rule 11. My friend on the other side has said basically that every Rule 11 violation vitiates the privilege because it's essentially a fraud on the court to sign that Rule 11 violation when it turns out that the lawsuit is objectively baseless. And this is why, I think, just to wrap this up here, why the verdict, I think, of reason and experience over time has been that this exception to the privilege needs to be cabined to crime and fraud. Fraud has a meaning in our law, which is… But we don't have a Rule 11 issue before us, do we? No, but I do think it's very important. Judge Bartle expressly rejected, unambiguously rejected, the proposition that in order to establish fraud for purposes of the crime fraud exception, you have to show misrepresentation and reliance. He said, no, you don't. He cited Chevron. Now, maybe I should take a second on Chevron because we haven't discussed it, but our view is that the whole point of Chevron was that there was a deception of the court by hiding the fact that the expert was actually an employee of a party and not neutral. And we understand your argument that there was no deception here. We understand the other side's assertion that, oh, yeah, there was deception here. So we've got you on that. And then, again, with respect to the misrepresentation of fact, there's no misrepresentation of any factual allegation or complaint. It's all about just this idea that the lawyer signed it. And if that's a misrepresentation of fact, then I do think that there is a gigantic floodgates problem here. And I do think, just if I could just say it one last time, this is all about the chilling effect. It's one thing to say, well, this is a unique set of circumstances here. But the problem is lawyers have to confront these kinds of very difficult judgments all the time. And if Judge Bartle's ruling or anything like it is the law, they're going to be doing so in the shadow of knowing that there is a material risk. And if they get the objective judgment wrong, then all those communications are going to get disclosed. And that is going to chill the communications in exactly the area where, because of the technical nature of it, I guess they need to be nervous if it's found to be objectively baseless, that is, a determination that no reasonable person could have believed this was a good claim. No reasonable person, which is an awfully high hurdle. And they'd have to say, gee whiz, all these emails we've got, all these text messages we've got, all these communications we've got, if they betray that we never believed it to start with, then we're in trouble. Then, yeah, maybe they're in trouble, but maybe they should be in trouble then, shouldn't they? But I think the problem, I think what exactly happened in this case, and Your Honor raised it with my friend on the other side, proves why it's not that simple. You know, the district court thought that that was true about the Teva case. The panel of the circuit reversed. And so if the district court was applying that logic at that stage, then boom, then the privilege is gone. Then you've got a court of appeals playing a backstop. Well, except that then that would be true as long as the law was unsettled. But if the law were settled in the direction of the respondent's favor, then that wouldn't be the case, certainly not in Mandamus. And so I do think that the idea that Schill is very real here. And it's not just the idea that it's not quite true. Just one last point, and then I'll sit down. It's not just that the lawyers might be worried and the clients might be worried about communications that says we don't believe we have a basis here, but communications that say this is a close case when you think about it hard. That's going to be evidence. And that's going to be evidence that can be exploited. And I do think that that's, you know, and you think a district court can't look at that and say, this is a tough case, we've got to look at it hard. You think a district court judge, a thoughtful, experienced district court judge, is going to look at that and say, holy smokes, that's a smoking gun? Really? Your Honor, I would say it's imbued with good faith to me. Let me then conclude in response to that question, Judge Jordan. Obviously, we're not going to talk about what's in the documents. But I would urge the court to read the documents with that exact idea in mind, that exact idea in mind, and then come to the conclusion about whether those documents should have been disclosed under that kind of understanding. Thank you. Thank you, Judge. We've got the matter under advisement.